## BUSSEY v. LUCE.

The report of the commissioner under the resolve of *March* 3, 1803. respecting the townships assigned to Gen. *Knox* and others, is conclusive evidence, against all persons, as to the occupancy by actual settlers, of the lots therein mentioned.

This was a writ of entry in which the demandant counted upon his own seisin within 30 years and a disseisin by the tenant.

The demandant deduced his title from *Gen. Knox*; and read a deed from the Commonwealth of *Massachusetts* to *Knox* dated *July* 20, 1799, *extending and assigning* to him, for himself and all others interested in the *Waldo* patent, " all the lands belonging " to the Commonwealth"—-in certain townships—" excepting " however lots occupied by any settler on said assigned lands, " not exceeding 100 acres to each settler, as specified in the re- " solve of *February* 23, 1798."—He also read a deed from *Gen. Knox* and wife to himself dated *October* 16, 1804. conveying two of said townships, in one of which the demanded premises were situated, " excepting out of this conveyance 100 acres to each " settler within said two townships, meaning to except from this " conveyance the lots of the settlers within the aforegranted two " townships, as confirmed to the said settlers by the Honourable " the General Court."

The resolve of *February* 23, 1798, referred to a deficiency in the lands laid off to satisfy the grant to *Beauchamp* and *Leveret*, occasioned by an interference with the elder grant to the *Ply- mouth* company; and appointed an agent to ascertain the amount of that deficiency, and to survey and assign other ad- joining lands to make it up ;—but providing " that the lots not " exceeding 100 acres to each settler, which shall be occupied " by any settlers on the additional lands to be assigned by force " of this resolve, shall not be considered as taken to make up " said deficiency, but the said settlers who are not already " quieted by law, shall hereafter be quieted in their settlements " in such manner as the General Court shall direct."

The resolve of *March* 3, 1803. authorised and request- ed the governor with advice of council " to appoint some " suitable person to repair to said township,"—No. 2—" and

Bussey v. Luce.

" make a re-examination of the claims of the respective settlers
" within the same. And the person so appointed as aforesaid
" shall be duly sworn to the faithful and impartial discharge of
" his duty. And all evidence touching the validity of the
" said claims, shall be by persons under oath, or depositions
" duly sworn to; and the said *Knox* or his agent or attorney
" shall be duly notified of the time and place of attending said
" service; and the person so appointed, after due examination
" as aforesaid, shall enter the names of such persons *as he shall*
" *find to be properly entitled to their respective lots of land* on the plan
" and survey of *Ephraim Ballard*, and shall return the same to the
" Hon. *John Reed* and *Peleg Coffin*, Esqs. agents for the Common-
" wealth. And the said person appointed as aforesaid shall give
" *a certificate to each settler* as aforesaid, under his hand, con-
" taining the number and description of his lot : *which certificate.*
" *shall be considered as evidence of the said settler's title*, and the
" said settlers, so certified, shall within two years pay to the
" agent of this Commonwealth the sums respectively at which
" their several lots were appraised by the said *Ballard ;* with
" interest from the date of said survey, and shall be entitled to
" receive of the said *John Reed* and *Peleg Coffin*, Esquires, good-
" *and sufficient deeds of their respective lots as aforesaid.*"

Under this resolve *Salem Towne* Esquire was appointed, and
executed the powers therein given. His return, which was pro-
duced by the tenant, was as follows :—" Agreeably to a resolve
" of the General Court passed *March* 3, and the appointment of
" the governor with advice of council *March* 4, 1803. I have
" made a re-examination of the claims of the settlers in township
" No. 2."—" and after a due examination find the following per-
" sons whose names are under written, properly entitled to their
" respective lots, and have entered their several names on the
" plan and survey made by Mr. *Ephraim Ballard* agreeably to
" the abovesaid resolve, and have given a certificate containing
" the number and description, to each of them, of his lot, as di-
" rected by the above resolve."—Here followed a list of the set-
tlers, and among them that of *Abel Hardy* for lot numbered *fif-
teen, which is the land demanded.*

The tenant then proved by Col. *Dutton* that in 1803, he was
employed by Gen. *Knox* to appear before Mr. *Towne* and op-

pose the claims of the settlers;—that in doing this he governed himself by the resolve of *March* 3, 1803,—that he collected opposing proof and laid it before the commissioner,—and that Gen. *Knox* paid him for his services.

The tenant deduced his own title by deed of quitclaim from *Hardy* to one *Varnum, February* 5, 1806, and a release from *Varnum* to himself in the same year;—and he shewed a deed dated *March* 3, 1807; from the agents of the Commonwealth to *Hardy,* conveying the demanded premises; which deed was procured, and the consideration-money paid, by the tenant himself.

The demandant objected to the admission of the resolve of 1803, the report of Mr. *Towne;* and the testimony of Mr. *Dutton ;* but the presiding Judge overruled the objection.

The demandant then offered to prove that at the time of the passage of the resolve of *February* 23, 1798; and at the execution of the deed to Gen. *Knox,* the lot demanded had not been run out; nor occupied, nor improved, nor settled; by any person;—but this the presiding Judge refused; and instructed the jury that if they believed that Gen. *Knox* assented to the resolve of *March* 3, 1803, and the mode therein provided for ascertaining the lots settled and occupied in the township, the return made by Mr. *Towne* was conclusive evidence that the lot demanded was settled and occupied; and the tenant would therefore be entitled to their verdict. And they accordingly returned a verdict for the tenant; which was taken subject to the opinion of the whole Court upon the correctness of the Judge's direction to the jury, and upon the admissibility of the testimony rejected.

*R. Williams,* for the demandant:

By the deed to Gen. *Knox,* he became seised of all the lands *not in fact occupied at that time by any actual settler ;* and they remained his until regularly conveyed by him, in some of the modes appointed by the general laws. This he has never done, except to the demandant. If the lot demanded was not occupied by *Hardy at the time of* the execution of *Knox's* deed, then it became *Knox's* land, over which the Commonwealth could retain no control, and which it could not affect by any subsequent re-

solves. It reserved to itself the *manner of quieting* settlers, *but* not the *right of declaring who* were such. The question of actual occupancy, and the proceedings of Mr. *Towne* were matters *en pais ;* and the absence or presence of Gen. *Knox* could be of no more effect than if he, being told that *Hardy* was the occupant of the lot, had verbally but erroneously admitted it to be true. It might shew that he was misinformed of a fact,—but could not operate to alienate land which was once his own.

*McGaw,* for the tenant, contended that the power of quieting the settlers being reserved to the General Court by the resolve of *February* 23, 1798, and the resolve of *March* 3, 1803 being only a further provision for the attainment of the same object; the appearance of Gen. *Knox* before the commissioner under this latter resolve was in law a submission to his jurisdiction and authority to ascertain who were in fact settlers, within the meaning of the original resolve ; and the report of the commissioner upon the matter thus submitted to him was conclusive evidence of the facts reported.

MELLEN C. J. delivered the opinion of the Court.

We have no doubt that the fee of all the lands described in the deed of *July* 20, 1799, passed to *Knox* and others, excepting the lots occupied by any settler on the tract, not exceeding one hundred acres to each settler, as specified in the resolve of *February* 23, 1798. The fee of *such* lots remained in the Commonwealth, so that the settlers thereon might afterwards " be " quieted in their settlements in such manner as the General " Court" should " direct." The tenant claims under *Abel Hardy,* and under a deed made to him by the agents of the Commonwealth, *March* 3, 1807, on the ground of his having been in the occupancy of the demanded premises as a settler, according to the language and intent of the resolve before mentioned. If such was his occupancy and character, the deed of the agents to him was effectual, his title is good, and the verdict must stand.

The commissioner appointed under the resolve of *March* 3, 1803, pursued its directions,—notified Gen. *Knox* who appeared by his attorney at the time and place appointed, and by witnesses and arguments opposed the claims of the settlers ;—after

Bussey v. Luce.

a full hearing he made return of his proceedings and of the names of those persons who were entitled to their respective lots,—and among others the name of *Hardy*, who, in virtue of this decision and return of the commissioner, received the deed from the agents under which the tenant now claims, and on which he places his defence. It is contended by the counsel for the demandant, that the legislature, in the resolve of *February* 23, 1798, only reserved to themselves the right of prescribing the *manner* in which settlers should be " quieted in their settlements,"—but not the right of deciding themselves, or by any agents of the Commonwealth, *who were in fact settlers* within the meaning of that resolve ;—and that of course the proceedings under the resolve of *March* 3, 1803, were never binding on Gen. *Knox* or the demandant, and therefore parol proof ought to have been admitted to shew that *Hardy* never occupied that lot as a settler, according the resolve of *February* 23, 1798.—But in the first place there are strong reasons for believing that Gen. *Knox* solicited or consented to the passing of the resolve of *March* 3, 1803. The preamble states that a former survey had been made *ex parte*, because notice of such survey " *un-*" *fortunately was not received by said Knox*," and that some irregularities were *suggested* to have taken place " *in the course of*" *said business*."—In the next place it would seem that the commissioner would have had nothing to decide, unless the *claims* of the occupants were proper subjects for his consideration and decision. In deciding on their claims he must necessarily decide who were settlers occupying, and who were not. He had nothing to do with the *price* of the lands ;—*that* had been previously settled by *Ballard*. The provisions of the resolve of 1803 may thus serve to aid us in the construction of that of 1798. But even if there had been no reservation in the resolve of 1798, still, when *Knox* appeared by his attorney before the commissioner, governing himself by the resolve of 1803, urging his own claims, and contesting those of the settlers,—it is too late for him, or those claiming under him, to object to the decision of this equitable jurisdiction. The whole conduct of *Knox* carries proof of an acquiescence in such decision, as it does not appear that he ever after contested the facts on which the decision was founded, or objected to the giving of a

Bussey v. Luce.

deed by the agent. The language of the last resolve is posi-tive that the *certificate* of the commissioner should be *considered as evidence of the settler's title*, and entitle him to a deed, on pay-ment of the estimated value; which deed he has received, and, as we must presume, in virtue of such certificate. No other tribunal was contemplated, or ought, in such case, to assume jurisdiction. We think the opinion and instructions of the Judge to the jury were correct, and accordingly there must be

*Judgment on the verdict.*